UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 15-CR-6079-FPG-JWF

DECISION AND ORDER

AARON RUCKER,

Defendant.

## INTRODUCTION

On May 26, 2015, the United States of America filed a two-count indictment alleging that Defendant Aaron Rucker robbed a home while using a firearm in violation of 18 U.S.C. §§ 1951(a)[1] and 924(c)(1)(A)(ii). ECF No. 1. The next day, the case was referred to Magistrate Judge Jonathan W. Feldman for pre-trial matters and dispositive motions. ECF No. 2.

On July 21, 2015, the United States filed a four-count, superseding indictment alleging that Rucker conspired to violate the Hobbs Act on November 4, 2014; Rucker attempted to violate the Hobbs Act on October 8, 2014 and November 4, 2014; and that he used a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). ECF No. 8.

On April 28, 2016, Rucker moved to dismiss the first three counts of the indictment; moved to dismiss the entire indictment for selective and vindictive prosecution; and moved to suppress evidence seized from his bedroom, identification testimony, and statements that he made. ECF No. 49. Judge Feldman then held several hearings, including a suppression hearing, and issued a report and recommendation ("R&R") recommending that the Court deny all of Rucker's motions. ECF No. 115. Rucker then objected to Judge Feldman's R&R. ECF No. 118. For the reasons

---

[1] 18 U.S.C. §1951 is commonly referred to as the "Hobbs Act."

that follow, the Court accepts Judge Feldman's R&R in part. Consequently, Rucker's motion to suppress evidence seized from his bedroom is granted, and his remaining motions to suppress and motions to dismiss the indictment are denied.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.").

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3).

## DISCUSSION

### I. Objections

Rucker makes two objections: (1) that Judge Feldman erred in denying his motion to suppress evidence seized from his bedroom, and (2) that Judge Feldman failed to address his request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Rucker's second objection, regarding the *Franks* hearing, is simply a repackaged version of his first objection. Rucker argues that Judge Feldman granted a search warrant for his bedroom based on an improper protective sweep of his house incident to his arrest. ECF No. 118 at 7-10. This argument matches

the one Rucker makes in support of his first objection—the protective sweep was illegal, so all evidence seized from Rucker's bedroom based on the subsequent search warrant should be suppressed. ECF No. 118 at 3-7. Accordingly, the Court construes both objections as a single objection to Judge Feldman's recommendation that the Court deny Rucker's motion to suppress the evidence seized from his bedroom.

Additionally, because Rucker did not object to Judge Feldman's other recommendations, the Court reviews them for clear error. *See Preston*, 635 F. Supp. 2d at 269. The Court has reviewed Judge Feldman's recommendations regarding the motions to dismiss three counts of the indictment, the whole indictment, and the motions to suppress identification testimony and Rucker's statements, and finds no clear error. Consequently, the Court adopts those recommendations and the motions are denied. The Court next considers Rucker's objection regarding the motion to suppress the evidence seized from Rucker's bedroom.

## II. Factual Background

On May 29, 2015, FBI Special Agent Jason Galle and other members of the FBI's Buffalo Field Office SWAT team executed an arrest warrant for Rucker at 784 Hudson Avenue, Rochester, New York. *See* ECF No. 97 at 8. FBI Special Agent Christopher Fiorito led the arrest team. *Id.* at 29. The warrant authorized the arrest to begin at 6:00 a.m. *Id.*

While agents usually know how many people reside in the home at which they are executing a search warrant, Agent Galle could not recall this information for 784 Hudson Avenue. *Id.* at 37-38. Agent Galle was also not aware of any dangers in the house and did not participate in surveillance of the residence before May 29, 2015. *Id.* at 28, 33, 64-65.

Agent Galle and two other agents were the first to reach the residence's porch. One of the agents knocked "very loudly" and announced, "FBI, search warrant, come to the door" three times,

3

over the course of 30 to 45 seconds. ECF No. 97 at 11-12. There was no answer. *Id.* at 12. Agent Fiorito then ordered the agents to breach the front door. *Id.* After the door was breached, Agent Galle "began giving commands to any occupants inside, continued to announce our presence, we're FBI, and instructed anyone inside to come to the door." *Id.* at 14.

Agent Galle did not enter the residence until the two individuals found inside were removed. *Id.* at 34. Consequently, the breach of the residence and the commands he gave all occurred through the front door. *Id.* Looking through the front door, Agent Galle saw a living room with a couch at the rear of the room facing the front door. *Id.* at 16-17. Galle could not see what was directly behind the couch's profile or the far left portion of the living room. *Id.* at 16-18. He did see a hallway leading back to the kitchen in the center of the room behind the couch. *Id.* at 17. While the agents stood on the porch, an individual later identified as Louis Perry emerged into the main room in front of the couch from the left side of Agent Galle's vision. *Id.* at 18, 22, 35. Galle stated "either he was on the sofa out of my sight to the extreme left side of the sofa; he could have been in that bedroom [to the left]; but also could have been just standing in that area in front of the door." *Id.* at 18.

Mr. Perry complied with the agents' verbal commands, exited the home, and was placed in handcuffs. *Id.* at 18-19. Approximately twenty or thirty seconds later, Rucker emerged from a doorway on the left side of the room behind the couch. *Id.* at 20, 38. Galle saw a cell phone in Rucker's hand and told him to place it on the couch. *Id.* at 21. Rucker complied and followed Galle's commands to come to the doorway. *Id.* He was then placed in handcuffs and brought out to the porch. *Id.* Galle stated that the arrest of Perry and Rucker "was all done from outside the threshold of the door." ECF No. 97 at 34. Galle could not remember if he asked Rucker if there

were any other people in the home, but he typically asks occupants whether anyone else remained in the home. *Id.* at 40-41.

At that point, the area was still "a danger area, uncleared space." *Id.* at 23. In order to secure the home, other agents were stationed in direct sight of all doors and windows of the residence. *Id.* at 30, 44. Agent Galle testified that although he had no knowledge that anyone else was in the residence, "in my training and experience people have lied to me in the past about people being present [in a house.] Any uncleared space is potentially dangerous." *Id.* at 46-47.

Special Agent Fiorito then ordered the agents "to conduct a security sweep." *Id.* at 23. Approximately ten members of the SWAT team entered the residence, "stepping into rooms, visually clearing them, briefly looking under beds to make sure no one is hiding under a bed, opening a closet." *Id.* at 23-25. Agent Galle remained in the living room while other members of the team secured the house. *Id.* at 24. The agents only entered the first floor of the residence, which included four or five rooms. *Id.* at 24-25. The sweep took between five and ten minutes. *Id.* at 25.

FBI Special Agent Aaron Allan participated in the security sweep. *Id.* at 75. Agent Allan entered the living room and then went through "a door in the back left corner" of the living room into a bedroom. Tr. at 77. In the room, Agent Allan saw "a bag of a white powdery substance on the television stand or the stand that the television is on; there was a magazine for a pistol in there; as well as some ammunition in the room." ECF No. 97 at 79. The ammunition was on a stand next to the bed, and the magazine was by the television. *Id.* at 80-83. Agent Allen observed all of this without opening any containers or drawers. *Id.*

Based on the contraband found during the "protective sweep," the Government applied for a search warrant for Rucker's bedroom at 784 Hudson Avenue, which Judge Feldman authorized.

5

ECF No. 115 at 26. On May 29, 2015, law enforcement officers executed the search warrant and seized a handgun magazine, one round of ammunition, three cell phones (and the information therein), suspected cocaine, and documents from Rucker's room, among other things. *Id.* Rucker then moved to suppress these items, ECF No. 49 at 37-39, and Judge Feldman recommended denying the motion in his R&R, ECF No. 115 at 20-33.

**III.    Motion to Suppress**

In his R&R, Judge Feldman made three findings regarding the search and seizure of evidence at Rucker's residence: (1) agents permissibly searched Rucker's room at 784 Hudson Avenue during their "protective sweep;" (2) agents saw items in Rucker's room in plain view; and (3) agents seized those items pursuant to a valid search warrant. ECF No. 115 at 32-33. Rucker objects to Judge Feldman's first finding, [2] arguing that the protective sweep was an illegal search. ECF No. 118 3-7, 9. Consequently, the Court reviews that finding *de novo*.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quotations and citations omitted). "That presumption is rebuttable, however, as 'warrantless searches of homes, while subject to special scrutiny, are nevertheless also subject to a balancing test—weighing an individual's expectation of privacy against the government's need for certain information—for determining reasonableness under the Fourth Amendment.'" *United*

---

[2] Rucker argues that Judge Feldman incorrectly stated in his R&R that Rucker's cell phone was properly seized incident to arrest. ECF No. 118 at 3-4. Instead, Rucker notes that agents seized the phone based on Perry's consent, which Perry gave the agents while they were executing the search warrant issued after Rucker's arrest. *Id.* Since it appears that Rucker is challenging Judge Feldman's factual findings, and is not arguing that agents illegally seized the phone, the Court does not address this argument.

6

*States v. Hassock*, 676 F. Supp. 2d 154, 157-58 (S.D.N.Y. 2009) (quoting *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 157, 173 (2d Cir. 2008)).

"Under the Fourth Amendment's protective sweep exception, agents executing an arrest inside a home may, 'as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched.'" *United States v. Guerrero*, 813 F.3d 462, 467 (2d Cir. 2016) (quoting *Maryland v. Buie*, 494 U.S. 325, 334, (1990)). Where agents execute an arrest "just outside" the home, they are authorized to sweep the house if "there are articulable facts that would warrant the reasonable belief that someone within the home is aware of the arrest outside the premises and might destroy evidence, escape or jeopardize the safety of the officers or the public." *Id.* (quoting *United States v. Oguns*, 921 F.2d 442, 446 (2d Cir. 1990)) (internal quotation marks omitted).

Here, the FBI agents' protective sweep was an illegal search. Rucker was arrested "just outside" of 784 Hudson Avenue. Agent Galle stated that the agents "didn't enter the residence until [Perry and Rucker] were removed." ECF No. 97 at 34. He explained further that "all of the dialogue that I had, [] taking the two individuals into custody, that was *all done from outside the threshold of the door*." *Id.* (emphasis added). Therefore, the agents needed to show that "there are articulable facts that would warrant the reasonable belief that someone within the home is aware of the arrest outside the premises and might destroy evidence, escape or jeopardize the safety of the officers or the public" to justify their protective sweep of the house and Rucker's bedroom after Rucker's arrest. *See Guerrero*, 813 F.3d at 467 (quoting *Oguns*, 921 F.2d at 446) (internal quotation marks omitted).

The record is devoid of those "articulable facts." Agent Galle testified that he had no information about the number of individuals in the house. *See* ECF No. 97 at 37, 41. Agents Galle and Allan did not surveil the house before executing the warrant and knew only that it was Rucker's residence. *Id.* at 28, 64-65, 90-91. The agents found no drugs or weapons on either Perry or Rucker. *Id.* at 36, 40. Agent Fiorito ordered the protective sweep, and Agents Galle and Allan did not know his basis for ordering it. *See id.* at 42-43, 91-92. The only basis offered for the protective sweep was the danger of uncleared space and the potential of unknown individuals hiding in the house. *Id.* at 46-48. Judge Feldman, however, found that no articulable facts existed warranting a reasonably prudent officer to believe 784 Hudson Avenue harbored an individual posing a danger to the agents. ECF No. 115 at 28-29. Without any other articulable facts that would warrant a reasonable belief that someone might have destroyed evidence or escaped, this Court finds that the search of Rucker's bedroom violated his Fourth Amendment rights.

## IV. Exclusionary Rule

"If a court concludes that a search or seizure violated the Fourth Amendment, it must determine whether to suppress the evidence obtained as a result of that illegal search or seizure" under the exclusionary rule. *United States v. Matos*, 17 Cr. 182 (KBF), 2017 WL 5989203, at *3 (S.D.N.Y. Dec. 4, 2017) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)).

The exclusionary rule[3] is a "deterrent sanction," *Davis v. United States*, 564 U.S. 229, 231-32 (2011), and includes both the "primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 136 S. Ct. 2056, 2061 (2016) (quoting *Segura*

---

[3] Traditionally, citizens subject to an unconstitutional search enforced their rights through tort suits or self-help. *Strieff*, 136 S. Ct. at 2060-61 (citing Thomas Y. Davies, *Recovering the Original Fourth Amendment*, 98 Mich. L. Rev. 547, 625 (1999)). In the 20th century, however, the exclusionary rule became the "principal judicial remedy" available. *Strieff*, 136 S. Ct. at 2061 (citing *Mapp*, 367 U.S. at 655).

8

*v. United States*, 468 U.S. 796, 804 (1984)) (internal quotation marks omitted). The exclusionary rule is a "prudential doctrine," *Davis*, 564 U.S. at 236 (quoting *Pennsylvania Bd. of Probation & Parole v. Scott*, 524 U.S. 357, 363 (1998)), and is "applicable only . . . where its deterrence benefits outweigh its substantial social costs," because "suppression of evidence . . . has always been our last resort, not our first impulse." *Strieff*, 136 S. Ct. at 2061 (quoting *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)) (omissions in original and quotation marks omitted).

Consequently, the Supreme Court has recognized several exceptions to the exclusionary rule, three of which "involve the causal relationship between the unconstitutional act and the discovery of evidence:" (1) the independent source doctrine, (2) the inevitable discovery doctrine, and (3) the attenuation doctrine. *Strieff*, 136 S. Ct. at 2061. The independent source doctrine does not apply, since the agents' illegal search "motivated [them] to apply for a search warrant." *United States v. Robertson*, 239 F. Supp. 3d 426, 459 (D. Conn. 2017) (citing *Murray v. United States*, 487 U.S. 533, 542, 543 (1988)). The Court thus analyzes only the inevitable discovery and attenuation doctrines below.

### A. Inevitable Discovery Doctrine

"The inevitable discovery doctrine provides that the fruits of an illegal search or seizure are nevertheless admissible at trial 'if the government can prove that the evidence would have been obtained inevitably without the constitutional violation.'" *United States v. Stokes*, 733 F.3d 438, 444 (2d Cir. 2013) (quoting *United States v. Heath*, 455 F.3d 52, 55 (2d Cir. 2006)). "The government bears the burden of proving inevitable discovery by a preponderance of the evidence." *Id.* (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). Proof of inevitable discovery "involves no speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Id.* (quoting *United States v. Eng*, 971 F.2d 854, 859 (2d Cir. 1992)). District

courts must determine "what would have happened had the unlawful search never occurred" considering "affairs as they existed at the instant before the unlawful search occurred." *Id.* (quoting *Eng*, 971 F.2d at 861).

Here, the inevitable discovery doctrine does not prevent suppression of the evidence found in Rucker's bedroom. The moment before the illegal search of Rucker's residence, agents were standing just outside its doorway. They had received an arrest warrant from Judge Feldman to arrest Rucker, who was secured and ready to be transported to a holding facility. They had no information about individuals, weapons, drugs, or any other illicit materials or activity in the residence to form a basis to search Rucker's bedroom.

More importantly, even after the agents searched Rucker's room and found contraband in it, Judge Feldman granted them a search warrant only for Rucker's bedroom. This speaks to the dearth of information the agents had available to form a basis to search 784 Hudson Avenue. Upon its review of the record, the Court finds no historical facts to show the agents would have inevitably and lawfully seized the items from Rucker's bedroom. Accordingly, the inevitable discovery doctrine does not apply.

### B.   Attenuation Doctrine

Under the attenuation doctrine, "evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'" *Id.* (quoting *Hudson*, 547 U.S. at 593). Three factors outlined in *Brown v. Illinois*, 422 U.S. 590, 603 (1975), guide the Court's analysis. *Id.* at 2061-62. First, the Court looks to the "'temporal proximity' between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of

10

evidence followed the unconstitutional search." *Strieff*, 136 S. Ct. at 2062 (citing *Brown*, 422 U.S. at 603). Second, the Court considers "the presence of intervening circumstances." *Id.* (citing *Brown*, 422 U.S. at 603-04). Finally, the Court examines "the purpose and flagrancy of the official misconduct," which is "particularly" significant. *Id.* (citing *Brown*, 422 U.S. at 604).

First, the illegal search of Rucker's residence was close in time to the subsequent search pursuant to a warrant. The illegal search occurred between 6:00 a.m. and 6:30 a.m. on May 29, 2015. *See* ECF No. 97 at 10-12, 25. The subsequent search occurred hours later, at 2:00 p.m. *See* 15-MJ-604, ECF No. 2 at 2. Passage of time marked in hours, not days, between the initial, illegal search and a subsequent search pursuant to a warrant favors suppression. *See Robertson*, 239 F. Supp. 3d at 458.

Second, there was no intervening cause between the initial illegal search and the subsequent search pursuant to the warrant. Indeed, the basis of the search warrant was the items found in Rucker's room in the initial, illegal search. *See* ECF No. 115 at 26. The record contains no other intervening cause or evidence that could have served as a basis for the search warrant.

Third, the initial, illegal search of Rucker's residence and bedroom was a flagrant violation of the Fourth Amendment. There simply was no basis for the agents' protective sweep—the agents had no information on the number of individuals or dangers within the house. They found no weapons, drugs, or other contraband on either Rucker or Perry when they were arrested. They could articulate no facts to show that any danger existed in the residence after they secured Perry and Rucker. Lastly, the record shows that the agents were planning to execute the protective sweep regardless of what occurred while executing the warrant. ECF No. 97, 47-49 (Agent Galle indicating he will conduct a protective sweep any time he executes an arrest warrant), 74 (Agent Allan's assignment was to conduct a protective sweep), 85 (Agent Allan knew he would conduct

11

a protective sweep at least one day before executing the warrant). At best, the agents exhibited a reckless state of mind toward Rucker's Fourth Amendment rights, which favors suppression. Accordingly, since all three factors favor suppression, the attenuation doctrine does not apply.

As a final analysis before ruling on suppression, the Court must determine whether the benefits of suppression outweigh its costs. *Herring v. United States*, 555 U.S. 135, 141 (2009). Because suppression "exacts a heavy toll on the justice system, . . . the exclusionary rule does not apply whenever suppressing evidence "might provide marginal deterrence." *United States v. Raymonda*, 780 F.3d 105, 117 (2d Cir. 2015) (quoting *Herring*, 555 U.S. at 141). Deterrence is justified when the police "exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.* at 117-18 (quoting *United States v. Stokes*, 733 F.3d 438, 443 (2d Cir. 2013)). "But when police act with 'an objectively reasonable good-faith belief that their conduct is lawful,' or when their conduct involves only 'simple, isolated negligence,' exclusion simply 'cannot pay its way.'" *Id.* at 118 (quoting *Davis*, 564 U.S. at 238).

Here, the Court finds that the benefits of deterring future Fourth Amendment violations outweigh the social costs of suppression. The record shows that the agents in this case were intent on performing a protective sweep of 784 Hudson Avenue regardless of what information they had or what situation they encountered. That is not what Second Circuit law dictates. To be clear, law enforcement officers should take precaution when executing search warrants, which the law entitles them to do. At the same time, however, law enforcement officers must also be aware of the effect their actions have on the constitutional rights of the accused. In this case, the agents showed little to no awareness of Rucker's Fourth Amendment rights. Consequently, the Court finds suppression is warranted to deter this behavior by law enforcement officers in the future.

## CONCLUSION

For the foregoing reasons, Judge Feldman's R&R, ECF No. 48, is ACCEPTED IN PART. Defendant Aaron Rucker's motion to suppress the evidence seized from his bedroom is GRANTED, and his remaining motions to suppress and motions to dismiss the indictment are DENIED.

IT IS SO ORDERED.

Dated: March 1, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court